CAROLINE O. MARX v. WILLIAM C. HALEY, EXECUTOR.

[45 South., 612.]

HOMESTEADS. *Excess over exempt value. Life estate to widow. Reversion to grand-children. Creditors' rights. Wills. Estates of decedents.*

Where there is an insufficiency of property other than the homestead to pay a testator's debts and the homestead, of greater value than is allowed to be exempt, is devised to the widow for life with remainder to grand-children:

(a) The creditors are entitled to have the property sold and the excess over the limit in value of a homestead applied to their debts; but

(b) The court should look to the situation and relationship of the parties and the terms of the will and in proper case should decree the sale of the reversionary interest alone, the widow offering bond that the proceeds thereof should satisfy the debts

FROM the chancery court of Copiah county.

HON. G. GARLAND LYELL, Chancellor.

Haley, executor of the will of Moses Marx, deceased, appellee, was complainant in the court below, and Mrs. Marx, appellant and others were defendants there. From a decree adverse to Mrs. Marx she appealed to the supreme court.

Moses Marx, deceased, executed and left at his death a last will and testatment, as follows:

"I, Moses Marx, of Copiah county, state of Mississippi, being of sound and disposing mind and memory, do declare this to be my last will and testament, revoking all other wills heretofore, made by me.

"Item 1. I direct that all my just debts and funeral expenses

be paid out of any moneys that I may have on hand at the time of my death and the proceeds from the collection of any debts that may be owing me including all debts owing me arising from the sale of the land belonging to me near Spencer, Copiah county, Mississippi, known as the Dunn lands and from the sale of forty acres of land which I own near the town of Beauregard which I direct to be sold by my executor hereinafter to be named by me for the purpose of paying my debts aforesaid without securing any order from any court to make said sale. Whenever the parties to whom I have sold the Dunn land aforesaid shall pay in full the purchase price thereof, I direct my said executor to execute a deed conveying said lands to said parties, but in case any of said parties shall make default in the payment of the purchase money, I direct my said executor to cancel the contract of sale heretofore made by me and direct him to resell said lands for cash or on credit without securing any order from any court to make said sale; it being my wish that all moneys derived from the sale of said Dunn land, whether said sales shall have been made by me or by my executor, are to be applied by my executor to the payment of my debts as aforesaid.

"Item 2. I give and bequeath to my beloved wife, Caroline O. Marx, for her separate use, all my household and kitchen furniture.

"Item 3. I give and devise to my beloved wife, Caroline O. Marx, for and during the term of her natural life, the following described real estate situated in the town of Hazlehurst, county of Copiah, Mississippi, to wit: Lots 3, 4 and 5 less fifty feet off of the west end of lot 3 and thirty feet off of the north side of the balance of said lot 3, all in square 33, section 10, township 10, range 8 east, on which is situated my residence, with remainder over to my grandchildren, Maud Jacobs and Ralph Jacobs, it being my intention to give to my said wife a life estate in the above described real estate, and at her decease said real estate is to belong to my said grandchildren, Maud Jacobs and Ralph Jacobs, as tenants in common.

"Item 4. I give and devise to my executor hereinafter to be named the following described lands situated in the town of Hazlehurst, Copiah county, Mississippi, to wit: 90 feet off of west end of lots 6, 7 and 8, square 28, on which my three store-houses are situated in trust and for the following purposes: He shall take possession of the said property and lease the same and from the rent arising therefrom, he shall pay to my said wife, Caroline O. Marx, the sum of $25 per month for and during her natural life and after paying taxes and insurance and other necessary charges on said property, he shall pay over the net balance of said rents to Maud Jacobs, Ralph Jacobs and Mrs. G. Sturm, share and share alike, and at the death of my said wife, I direct that my said executor shall hold in trust for Maud Jacobs the brick storehouse situated on one of the above described lots being now occupied as a storehouse by J. Q. Martin, together with the lot of land on which said store is situated until the said Maud Jacobs shall arrive at the age of twenty-one years, at which time I direct my said executor to convey said storehouse and lot of lands to the said Maud Jacobs in fee simple.

"At the death of my said wife, Caroline O. Marx, I direct that my executor shall hold in trust for the said Ralph Jacobs the brick storehouse situated in square 28, and now occupied as a drug store by the Hazlehurst Drug Company, and the lot of land on which said store is located until the said Ralph Jacobs shall arrive at the age of twenty-one years, at which time I direct my said executor to convey said storehouse to said Ralph Jacobs in fee simple.

"Upon the death of my said wife, Caroline O. Marx, I direct my said executor to convey in fee simple to the said Mrs. G. Sturm, the brick storehouse belonging to me and situated on said square 28, known as the 'Buggy House' and now occupied by the Bank of Hazlehurst as a banking house and the lot of land on which said storehouse is situated.

"It is my intention to charge said property with a payment of $25 per month to my said wife during her life.

"I nominate and appoint William C. Haley as executor of this my last will and testament, and it is my wish that he be not required to give any bond as said executor.

"In witness whereof, I hereunto set my name this 12th day of June, 1902.

"MOSES MARX."

After the death of the testator, in 1903, his estate was found insufficient to pay his debts, and after selling all of the property except the homestead, there still remained $1,321 of indebtedness due by the estate. The executor, thereupon, in 1905, filed a petition setting forth the facts in reference to the disposition of the property which came into his possession, the insufficiency of the estate, other than the homestead, to pay the debts, and showing that the homestead was worth more than $2,000 (the limit of value of homestead exemption allowed by Code 1892, § 1970, in the absence of an express homestead declaration made in writing and filed for record), and prayed that the court direct the sale of the homestead and that from the proceeds of its sale the sum of $2,000 should be set aside and held in trust or be put at interest for the use and benefit of the widow, Mrs. Marx, during her life-time, with remainder over to the testator's grandchildren, Maud Jacobs and Ralph Jacobs. The widow and grandchildren were made defendants. Mrs. Marx alone answered, contending that her life estate should not be sold and offered to give ample bond to make the remainder in the homestead bring the amount required to pay off the debts due by the estate. The court declined to adopt her view but ordered the sale of the homestead, the decree directing that the statutory amount of $2,000 of the proceeds should be set aside to await further orders of the court, while the balance should be applied to the payment of the debts of the estate.

*J. S. Sexton,* for appellant.

If, in considering the terms of the will, the situation and relationship of the parties to the testator and to each other be also

considered, the conclusion must inevitably follow that the testator could not have intended that his wife should be subjected to the sale of the homestead in order to preserve the remainder interests for the grandchildren.

The protection of the home for the benefit of the family at large is a matter of public policy, evidenced by the exemption laws found in our statutes; and the protection of the widow's interest therein is likewise a matter of public policy. Code 1906, § 1659.

In the case of *Moody* v. *Moody,* 86 Miss., 323, 38 South., 322, this court has held that, under Code 1906, § 1659, a widow is entitled to occupy the homestead as it existed in the lifetime of her deceased husband, without reference to its value, the limit of value placed by the statute law on exempt homesteads being solely for the benefit and protection of creditors and not affecting the rights of a surviving widow to use and occupy the homestead as against the other heirs of the deceased exemptionist. This public policy should be considered, if it is necessary to go outside of the terms of the will itself. In Rood on Wills, § 430, it is stated "that construction should be adopted which disposes of the property most nearly in conformity with the statutes of descent and distribution," and in § 426 of the same authority it is further stated that "a construction leading to a legal, just and sensible result is presumed to be correct as against one leading to an illegal, unnatural or absurd effect."

The construction reached by the court below not only defeats the plain provisions of the will in reference to the widow's rights in the homestead, but it defeats the policy evidenced by the statutes of the state.

The case of *Bank of Louisiana* v. *Lyons,* 52 Miss., 181, cited by learned counsel for appellee has no application here. It involved the questions of whether the conveyance, by a husband, of the homestead, under the Acts of April 18, 1878, encumbered the property as to the excess of value over $2,000, and whether it was proper for the chancery court to ascertain and separate the

exemption as provided in Code 1871, § 2137; and this court cor-
rectly decided affirmatively both of the questions involved.
However the court went further and said, "if the complainants
shall establish their right to relief, the chancellor ought to as-
certain whether the lot can be so divided as to allow the dwell-
ing house to be retained by the debtor on a valuation, he to pay,
as prescribed by Code 1871, § 2731, the excess of the valuation
over $2,000. If he does not so pay, then it shall be sold and if
it brings more than $2,000, the excess shall go to the complain-
ants." In other words, as against creditors, it was held that the
defendant could not enjoy a mansion in the way of a dwelling
house, but he was given the privilege of paying the excess in
valuation over the amount allowed as exempt by the statute.
And, likewise, it is conceded for the appellant that she cannot
as against creditors, enjoy for life the dwelling house left her by
her husband's will, and she herself, recognizing such fact, offered
to eliminate that whole question by making the reversionary in-
terest in the homestead bring enough to satisfy all creditors; and
the contest here is not between her and the creditors of her hus-
band's estate, but is really between her and the other legatees
named in the will.

The chancellor should have taken the bond offered by Mrs.
Marx, the appellant, and have entered a decree for the sale only
of the remainder interest.

*R. P. Willing,* for appellee.

A testator cannot, by the provisions of his will, defeat the
right in his creditors to resort to all of his property outside of
exempt property owned by him at his death, for the payment of
the debts due them. It is a cardinal principle that "a man must
be just before he is generous." He must pay his debts before he
can make disposition of his property by gift or devise.

The case of *Moody* v. *Moody,* 86 Miss., 323, 38 South., 322,
cited by counsel for appellant, holds the very doctrine contended

for by appellee.     On page 327 of the opinion in that case we find the following dictum: "The prime object of the law is to preserve the homesteads of the citizens of this commonwealth; but in order to prevent this protective provision from being converted into a means of defrauding creditors of their just rights, a limitation as to value was placed on the amount which could be claimed as exempt.     At the death of the head of the family, as in his lifetime, the excess of the value of the homestead above the amount stated is liable to be subjected to the payment of the debts of the decedent."

It is manifest that, in the present case, the homestead is worth $2,000 in excess of the amount allowed to a homesteader under Code 1892, § 1553; and it is further manifest that the homestead is not susceptible of partition; and that in order for the creditors to have the surplus applied to the payment of their claims a sale of the homestead is necessary.

This court has, time and again, adhered to the doctrine that so much of the homestead as is in excess of $2,000, can be reached by the creditors of the decedent's estate.  *Bank of Louisiana* v. *Lyons,* 52 Miss., 181.  And to the same effect see *Howell* v. *Bush,* 54 Miss., 439; *Dorrah* v. *Hill,* 73 Miss., 799, 19 South., 961; *Nixon v. Hewes,* 80 Miss., 93, 31 South., 899; *Moody* v. *Moody,* 86 Miss., 323, 38 South., 322.

It is manifest that the testator intended to leave the homestead to his widow for life; but it is likewise manifest that the remainder interest therein was intended by him to go to the two grandchildren after the widow's death.  Of these two estates created by the will the grandchildren's is of as high dignity as that of the widow.  It is not true that the homestead right of the widow is any more specific than the remainder interest of the two grandchildren, under the language of the will.

The action of the court below in ordering a sale of the entire fee, instead of a sale of the remainder interest belonging to the grandchildren, was manifestly correct.  To have ordered a sale

only of the remainder interest would have been to ignore the express provision of item three of the will. The intent of the testator must be followed as closely as possible.

Argued orally by *J. S. Sexton,* for appellant, and by *R. P.* *Willing,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

This case presents for construction the will of Moses Marx, deceased, which the reporter will set out in full. It is evident that the testator regarded himself as much more than solvent when he made this will. It turned out that he was insolvent. After the executor had sold everything else in accordance with the terms of the will to pay debts, there still remained some $1,321 of indebtedness, with nothing but the homestead left. This homestead was worth some $4,000. There has been no declaration of homestead by Moses Marx in his lifetime. The creditors, of course, had the right to have the $2,000 in value, over the value of the homestead, applied to their debts, or so much of it as might be necessary.

The will provided, as to the point here in contest, that the widow should have a life estate in this homestead, and that after her death the remainder should go to Maud and Ralph Jacobs, grandchildren, in equal shares. The executor filed a petition for the sale of the entire homestead for the purpose of paying this indebtedness. Mrs. Marx, in her answer, offered to give any bond the court might require to make the remainder estate bring the amount of the debt, if the court would limit the decree so as to order the sale of that remainder interest; and the only question before us for decision is whether, from the terms of the will, looking at all its provisions, the testator meant that his wife should have this life estate in the homestead undisturbed by any sale of the whole, if the sale of the remainder interest would pay the debts, or whether he meant the homestead should be sold in order to preserve to the remaindermen their remainder interest

in the $2,000, over and above the debts, which was exempt. It is proper to look at the situation of the parties, as well as at the terms of the instrument itself, and to the relationship of the parties. We cannot resist the conclusion, in so doing, that Moses Marx never intended that his wife should be subjected to the sale of the homestead in order to preserve the remainder interests of Maud and Ralph Jacobs. We think the chancellor should have taken the bond offered by Mrs. Marx, and entered a decree for the sale only of the remainder interest.

*Reversed and remanded, for decree in accordance with this opinion.*